## No. 13,146.

### STATE OF LOUISIANA VS. JOHN ALIAS RABB FIELDS.

#### SYLLABUS.

In an indictment for murder, it is sufficient to charge in general terms that the
accused committed the crime, without giving details as to the time or place
it occurred ; and, if on the trial the proof discloses that the mortal blow was
inflicted within the jurisdiction of the indictment, and that the death oc-
curred in some other parish of the State, or in some other State, the court
has, nonetheless, jurisdiction.

The Supreme Court can not entertain and decide questions raised in bills of ex-
ception involving testimony which is not annexed to, and made a part
thereof.

ON APPEAL from the Thirteenth Judicial District Court for the Parish of East Feliciana.   *Golsan, J.*

*M. J. Cunningham,* Attorney General, and *Isaac D. Wall,* District Atorney, for Plaintiff and Appellee.

*R. F. Walker* for Defendant and Appellant.

Argued and submitted May 6, 1899.
Opinion handed down May 29, 1899.

The opinion of the court was delivered by
WATKINS, J.   The defendant stands charged, in general terms, with having feloniously, wilfully and of his malice aforethought, killed and murdered one Lee Hughes, in the Parish of East Feliciana.

He was tried in September, 1898, and found "guilty as charged."

A new trial was granted, and he was tried the second time, at March term, 1899.

He was again found guilty as charged, and sentenced to be hung, and from that judgment and sentence, prosecutes this appeal.

I.

The first question presented relates to a motion made to quash the indictment on the ground that the deceased having died in the parish of Orleans, the thirteenth district court was without jurisdiction, notwithstanding the fatal blow was given in the parish of East Feliciana.

The motion to quash on the ground of the want of jurisdiction was overruled by the district judge, and we think correctly.

Our statute with regard to criminal proceedings, controls the provisions of the common law; and it provides that "when any crime or misdemeanor shall be committed on the boundary line of two or more parishes      *      *      *      or shall be begun in one parish and completed in another, it may be dealt with, inquired of, tried, determined, and punished in either of the parishes, as if it had been atcually and wholly committed therein."   Rev. Statutes, Section 988.

In State vs. Foster, 8th Ann., 290, it was held, that "the common law adopted by our Act of 1805, was modified by the statute of 2nd *George,* which provides that when the stroke has been given in England, and the death occurs out of England, or the reverse, the killing

may be inquired of in that part of England where either the death or stroke shall happen, respectively." 1 East, Pleas of the Crown.

"And so the late Court of Errors and Appeals in criminal cases held in the case of State vs. McCoy and others: 'That when the mortal stroke was given in this State, but the death occurred in the State of Mississsippi, the crime might be prosecuted in the parish where the mortal stroke was given." 8 Rob. Rep., 545.

"It was proper, therefore, to charge in the indictment the truth, that the death occurred on Lake Borgne, and it was immaterial whether it occurred within the jurisdiction of Louisiana, Mississippi or on the high seas, within the jurisdiction of the United States."

So, in State vs. Jones, 38th Ann., 792, it was ruled, that "under this statute, the District Court of Bossier, where the mortal blow was inflicted, was expressly clothed with jurisdiction over the offense and its prosecution; and, in consideration of this fact, it was legitimate and competent to charge in the indictment found by the grand jury of that parish, that the murder was therein committed, as was done, and not required to set out in detail that the death occurred in one parish, and the mortal wound was inflicted in another, since the place of death need only be averred, as before stated, for the purpose of showing the jurisdiction in the court.

"The substantial fact charged in the indictment was the murder, the place where the victim died was an immaterial circumstance, considered with reference to the law investing with jurisdiction over the crime the court of the place where the mortal stroke was given."

The foregoing authorities are perfectly conclusive against the motion to quash.

## II.

The next point urged by counsel for defendant is, that the court erroneously permitted proof of a dying declaration of the deceased Lee Hughes, on the ground that the proper basis had not been laid for its introduction.

The testimony was admitted by the trial judge, and objection was taken, and a bill retained to his ruling; but, as the record contains no part of the evidence, it is impossible for the court to determine what its character was, or whether the ruling admitting it was or was not erroneous.

## III.

The next objection relates to the judge's declination to grant a new

trial. The first ground of the motion stated relates to the ruling of the judge in overruling his motion to quash, on the ground of the want of jurisdiction of the court; but we think the reasons previously assigned are quite sufficient, and nothing further need be said.

The next ground of the motion is as follows:

"That after the court had charged the jury, and after the jury had retired to their room for deliberation upon their verdict, and had deliberated thereon for several hours, the trial judge, without any request from the jury for additional instructions, and on his own motion, ordered the deputy sheriff to bring the jury into court.

"That the judge then asked the foreman of the jury whether it was a question of law or fact that had prevented them from arriving at a verdict, and the foreman answered: 'It is a question of law and of fact.'

"That the judge then said to the jury that their duty was plainly before them. That they had the evidence and the law before them.

"The accused had been in jail for more than a year and that they should make some disposition of the case.

"That the jury then retired to their rooms, and after a short time, they returned for further instructions, and were brought into court, and they requested the judge to read his charge to them again. That the judge then gave to the jury a definition of murder, and said to them what should be required to constitute the crime of murder, and what should be required to reduce the crime of murder to manslaughter. He then stated to the jury substantially in these words: 'Gentlemen, I can not instruct you as to the defence in this case; he has none.'

"That these words were a comment on the evidence, and were calculated to and did influence their verdict, all of which we stand ready to verify."

In overruling the application for rehearing the judge made this statement:

"This case came on for trial on the motion for a new trial after argument was submitted, and it is ordered that the motion be overruled."

"On the trial of the motion, counsel for defendant offered the names of the foreman of the jury and other jurors to prove the following remarks of the court, made at the close of his second trial, by a jury as follows: 'Gentlemen, I can not instruct you as to the defence in

this case, he has none.' To which offering, counsel for the State objected on the ground that, even if such remark had been made, no exception was taken thereto at the time, and the court cannot act upon anything which does not appear by bill of exception or assignment of error taken at the time.   2nd.   That jurors cannot be heard to impeach their own verdict."

The judge then further remarked that "the court has no remembrance of using any such language in his charge, as is now sought to be proven by the members of the jury.   .

"The law clearly points out the remedy of the defense in such cases, " and to adopt the practice as is herein sought, would be a reversal of " all former proceedure ,and dangerous to a correct administration of " criminal law.

"And the objection is further sustained upon the ground set forth by the district attorney."

To this bill of exception, no part of the evidence is annexed, and it stands upon the statement contained in the bill, and the counter statement of the judge in overruling it.

In repeated decisions, this court has sustained the principle that the declaration of the judge is controlling in case of any difference existing between his statement and that of counsel, in the bill of exception.

Altogether, and in any view that can be taken of it, this bill of exception is without merit.

On the face of the record, we see no ground of relief that can be afforded the defendant.

Judgment affirmed.